# Russell & Mills v. First National Bank of Erie, Appellant.

*Evidence—Collateral issues—Relevancy—Admissibility.*

In the trial of an action of assumpsit by a receiver of a defunct partnership to recover the amount of certain checks drawn on the partnership funds, which were alleged to be forged, it was error to admit testimony that one of the partners had deposited funds to his personal account in amounts not greatly different from the amounts of the checks the day one of the checks was cashed, where there was no evidence that he forged the check in question, where the check was not produced at the trial and where the plaintiff offered no evidence as to how it was signed. Evidence of such a character raised an issue collateral to the one raised in the pleadings and its admission constituted reversible error.

In such action it was error to admit evidence that the name of one of the partners appearing on the signature card left with the bank was forged, and in the handwriting of the other partner, where there was no evidence that the latter ever had a card in his possession or ever had any opportunity to add a name to it after it had passed into the custody of the officers of the bank.

*Practice, C. P.—Charge of court—Sufficiency.*

In an action against a bank by a receiver of a partnership to recover the amount of checks drawn on partnership funds, it was error for the court, in its charge to the jury, to refer to one of the partners as having "got into the penitentiary over this transaction," when there was no evidence in the case that such partner had in fact been confined in the penitentiary or that he had ever been indicted for or convicted of the commission of a crime in re-

lation to this transaction, or any other one that would have had any bearing on the solution of the question in hand.

Argued November 14, 1921. Appeal, No. 74, April T., 1922, by defendant, from judgment of C. P. Erie County, Nov. T., 1920, No. 156, on verdict for plaintiff in the case of John A. Russell and George H. Mills, late partners trading and doing business as Mills Products Company, in the hands of Lytle F. Perry, Receiver, v. The First National Bank of Erie, Pennsylvania. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Assumpsit by receiver of partnership to recover the amount of certain checks drawn on partnership funds, which were alleged to be forged. Before ROSSITER, P. J.

The opinion of the Superior Court states the case.

Verdict for plaintiff for $1,253.04 and judgment thereon. Defendant appealed.

*Errors assigned* were various rulings on evidence and the charge of the court.

*W. Pitt Gifford,* of *Gunnison, Fish, Gifford* and *Chapin,* for appellant.

*Frank B. Quinn,* and with him *John B. Brooks and Charles H. English,* for appellee.

OPINION BY HEAD, J., April 17, 1922:

The plaintiff was the receiver of a partnership, that had become insolvent. It consisted of two members, John A. Russell, and George H. Mills, doing business under the name of Mills Products Company. The firm opened a checking bank account with the defendant bank and, from time to time, deposited sums of money therein against which checks were to be drawn as the business would require. It appears to be entirely un-

disputed that in their articles of partnership it was agreed that checks to be drawn against the firm funds were to be signed by both of the partners. As Russell was engaged in other business and was not to be active in the affairs of the firm the agreement was that his daughter Harriet should have charge of the books and accounts and should be duly authorized to sign the firm checks in his name and on his behalf. At the time the account was opened in the bank the two partners in person went there accompanied by the daughter of Russell and the arrangement between the partners as to the manner in which checks were to be signed was made known to the bank. The latter furnished a signature card which, according to all of the testimony, was signed by Mills and by Harriet M. Russell for her father "John A. Russell per H. M. Russell." The testimony was in conflict as to whether or not the card, as presented to the bank officers, contained the signature of John A. Russell alone.

The action is founded upon the plaintiff's allegation that the defendant bank cashed certain checks which were not signed in the manner provided for in the agreement of partnership, of which the bank was fully cognizant. As a result of this, certain moneys were paid out which the plaintiff alleges were not properly chargeable against the firm account, the proceeds of which were never received by the firm or applied to its indebtedness. The testimony of the plaintiff applied principally, if not entirely, to three certain checks. These checks were not produced at the trial. The bank book of the firm had been balanced and its checks returned on the first day of August. It was not until the twenty-third it had notice through a visit from Miss Russell that there was some difficulty about the checks. The statement of claim averred and the plaintiff's testimony tended to prove, that Miss Russell had not signed any one of the three checks in question and that if her name appeared thereon as signing for her father, such signature was not

made by her nor authorized by her or her father. The testimony of the officers and clerks of the defendant bank just as clearly supported the contention that the checks were signed both by Mills and by Harriet Russell for her father in exact accordance with the signature card. Having thus indicated the controlling question of fact in the case, we turn to an examination of the assignments of error.

For some reason, not apparent to this court the plaintiff was permitted over the objection of the defendant to prove that George H. Mills had an individual bank account in the same bank, and that upon certain dates approximating the dates of the checks in question, he had deposited in his own account sums of money in amounts not greatly different from the amounts of the firm checks in question. Evidence of that character raised an issue collateral to the one raised in the pleadings. The proof thus admitted in no way tended to establish either that Harriet Russell had not signed the checks herself or that George H. Mills had forged her signature thereto. We are of opinion the admission of this evidence was a mistake and that it was harmful to the defendant.

At the trial when the bank produced the signature card it contained the name of John A. Russell, the following being a description of the contents of the card:

> "Mills Products Company (two signatures)
> "John A. Russell
> "By H. M. Russell
> "George H. Mills
> "John A. Russell."

As it was not claimed by the bank that any of the checks in question had been signed by John A. Russell in his own handwriting as a member of the firm, it is not apparent how it became of material importance that the court should go into an inquiry as to whether the name "John A. Russell" was or was not on the signature card

when it was handed to the bank officer. His daughter testified that his name did not then appear on the card. The bank officers and clerks united in testifying that the card, as presented at the trial, was in precisely the same condition as it was when it was prepared at the bank by the members of the firm present and handed to the vice-president of the bank. Over the objection of the defendant, the plaintiff was permitted to prove, not only that the card did not contain the name "John A. Russell" when it was delivered to the bank, but that such name, appearing on the card as it was produced at the trial, had been forged by George H. Mills. There was not a spark of evidence that Mills ever had the card in his possession or ever had any opportunity to add a name to it after it had been passed to the officers of the bank by the two plaintiffs and Miss Russell. This again tended to confuse the minds of the jury by directing their attention to a question not material to the one in issue, the effect of which was likely to induce them to conclude first, that Mills had forged the name of John A. Russell to the signature card and, second, having done that, he would quite likely forge the name of Harriet M. Russell to the checks in question. That would be a conclusion which the jury would have no right to draw and we are of opinion the single and simple issue of fact which ought to control and would control the proper disposition of this case, was clouded by the presence in the case of this testimony. The second assignment is sustained.

In the course of his charge, the learned trial judge called the attention of the jury to what occurred at the bank at the time the account was opened and the signature card prepared and delivered to the proper officer. In so doing he said: "It seems this Mills, who later got into the penitentiary over this transaction, was there," etc. There was not a particle of evidence in the case that Mills had, in fact, been confined in the penitentiary, much less was there any evidence that he had been in-

dicted for or convicted of the commission of a crime in relation to this transaction or any other one that would have any proper bearing on the solution of the question in hand.  It needs but little argument to reach the conclusion that in the light of the evidence which the court admitted and under the color given to the whole transaction by the unwarranted statement concerning Mills that we have quoted, there was but little chance for the defendant to have its side of the issue of fact fairly considered.  For these reasons we must sustain the assignments of error and award a new trial.

Judgment reversed and a venire facias de novo awarded.